# Mead, Appellant, *v.* Central Pennsylvania Traction Company.

*Negligence—Street railways—Collision of automobile and car—Contributory negligence—Case for jury.*

Where an automobile stalls upon a street car track as a result of the unexpected failure of its engine, at a point where the motorman of a street car two hundred and fifty feet away has a full view of the automobile, and it appears that while the chauffeur was trying to start his engine, remaining in the automobile, the motor-

man so operated his car as to run into the automobile, the question
of the motorman's negligence and the chauffeur's contributory
negligence is for the jury.

Argued March 14, 1916.   Appeal, No. 4, March T.,
1916, by plaintiff, from judgment of C. P. Dauphin Co.,
Jan. T., 1910, No. 64, for defendant n. o. v. in case of
Arthur C. Mead v. Central Penna. Traction Company.
Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER
and WILLIAMS, JJ.  Reversed.

Trespass to recover damages for injuries to an auto-
mobile.  Before KUNKEL, P. J.

See 54 Pa. Superior Ct. 400.

At the trial the jury returned a verdict for plaintiff
for $855.  Subsequent the court entered judgment for
defendant n. o. v.

*Error assigned* was in entering judgment for defend-
ant n. o. v.

*E. E. Beidelman* and *James A. Stranahan,* for appel-
lant.—Judgment should have been entered on the ver-
dict: Rauch v. Smedley, 208 Pa. 175; Cleary v. Pitts-
burgh, Allegheny & Manchester Traction Co., 179 Pa.
526; Bard v. Philadelphia & Reading Ry. Co., 199 Pa.
94; Woelfel v. Federal Street, Etc., Ry. Co., 183 Pa. 213;
Longenecker v. Penna. R. R. Co., 105 Pa. 328; Wilson v.
North Side Traction Co., 10 Pa. Superior Ct. 325; Byrne
v. Montgomery, Etc., Ry. Co., 19 Pa. Superior Ct. 531.

*Chas. L. Bailey,* of *Wolfe & Bailey,* for appellee,
cited Crumley v. Philadelphia Rapid Transit Co., 55 Pa.
Superior Ct. 599.

OPINION BY ORLADY, P. J., April 17, 1916:

When this case was before us, as reported in 54 Pa.
Superior Ct. 400, the judgment was reversed, this court

saying, "When the automobile of the plaintiff came to a stand-still upon the street car track, as the result of the unexpected failure of its engine, it was his duty to signal with reasonable promptness to those operating the approaching street car, in order that they might know that the automobile could not be gotten off the track. What signal to be given in such a case must depend upon all the circumstances, and would, therefore be a question for the jury. We are of opinion that it was error for the court below to charge the jury, as a matter of law, that the plaintiff was not required to get out of his automobile, and go upon the track to warn the motorman of the danger. Whether the plaintiff ought to have done so was for the jury to determine." We have no intention of modifying this in any particular. It is undoubtedly a correct statement of the law.

On the retrial of the case, the testimony was substantially the same. The plaintiff, who was driving his own car, stated, "As I reached the corner of 17th and Walnut streets, I stopped the car, and looked up and down the street to see if there was anything coming down; that was a dangerous place; I was about 10 or 15 feet from the street car track; I could see up Walnut street 284 feet; there was nothing in sight; I started up the car and got as far as the middle of the trolley track, when my engine stalled; then I looked and saw a trolley car coming down 225 or 250 feet away; I was trying to start the engine of my automobile; there is a coil box on the car and a little button, and in most instances I could start the engine by turning this little button, but it did not work that time, and I was working at it trying to get it started; I wasn't specially worried because I thought the street car was far enough away, they could see me and not run into me; there was a clear view and no obstruction; I noticed the motorman when he was a comparatively short distance away, and he seemed to be working on the brakes to stop the car; no signal was given; I used the emergency brake to stop

the car; then I released the brake, and there was just momentum left in the coil box of the engine to turn the engine over a couple of times to carry me to the middle of the track, where it stalled; the engine was not running; while approaching the track I could have stopped the car at any minute with the brake; it was a sort of crawl. When I found the car was stalled I continued the efforts I was making; was down pushing the button on the coil box trying to start the engine; the car started from the seat in most instances; did not leave the car at all, even when I saw the trolley car coming; it was so far away I did not anticipate any danger."

To determine the effect to be given this testimony, the defendant submitted a carefully prepared point for instruction to the jury, evidently framed on the opinion of this court in reversing the former judgment, as follows: "8. When the automobile of the plaintiff came to a standstill, upon the street car track, as the result of the unexpected failure of his engine to work, it was his duty to signal, with reasonable promptness, to those operating the approaching car, in order that they might know that the automobile could not be gotten off the track. As the plaintiff admits that he gave no signal of any kind, he failed in his duty and the verdict must be for the defendant." To this the court answered, "This question is for the jury, and we cannot say as a matter of law, that the plaintiff's failure was negligence. It is suggested in the argument of counsel for the plaintiff, that the fact that the plaintiff was trying to start his car was notice, or a signal to the approaching street car that it was in distress and could not get off the track. You will determine how that is. The plaintiff himself says he was sitting in his car; he says he was trying to push the button to start it; you will determine how far that would indicate to any one that he was in distress; rather, wouldn't it indicate to the motorman of the approaching car that the plaintiff himself was satisfied he could go on, and there was no necessity for any signal, and therefore he gave

none.  The mere attempt to start the automobile, how far would that be notice to the motorman that the plaintiff was unable to get off the track?  The plaintiff himself testified, that he thought he could get off, and as suggested by the defendant, if he had a right to think he could get off, the motorman had an equal right to think the same thing.  To that you will give such weight as you think it deserves."  The verdict was for the plaintiff, and on motion for judgment non obstante veredicto, the court felt itself obliged to enter a judgment in the defendant's favor, on account of the opinion of this court in 54 Pa. Superior Ct. 400, quoting as above, except the concluding sentence, "The Superior Court having thus declared, that it was the duty of the plaintiff to give some signal, his failure to do so, we feel bound to say, following what was there said, amounts to contributory negligence, which bars his recovery."  The controlling part of our decision is in the sentence omitted from the opinion of the court below—as follows: "We are of opinion that it was error for the court below to charge the jury, as matter of law, that the plaintiff was not required to get out of his automobile and go upon the track to warn the motorman of the danger,—whether the plaintiff ought to have done so was for the jury to determine."  This direction was followed in the charge on the trial, and that question was fairly submitted in a lucid and fair manner.

The viewpoint of the motorman was very different from that of the plaintiff.  The motorman saw a stationary object obstructing the car tracks while he approached it for a distance of 250 feet.  The plaintiff was busy with the machinery of the car in his effort to release himself from his hazardous place, momentarily expecting that he could move his automobile from the tracks.  No signal, by voice or hand, would have given the motorman any further knowledge of the fact, that the car was stationary when he first came in view of it, and so remained until he struck it.  The plaintiff could have

abandoned his car for his personal safety, but that would not have excused the motorman in running into it, nor was he required to do this, as under the instruction of the trial judge, the jury found sufficient evidence to warrant the finding, that in his unexpected dilemma he was justified in his attempt to save both himself and car by starting his engine so as to move it from the track, and that the situation presented to the motorman was, of itself a definite signal, that should not have been misunderstood. The jury might rightly find, that the plaintiff, while he was helpless, with his dead engine, reasonably expected relief each moment while attempting to restore his power, and did, under the exceptional circumstances in which he was placed, all that could be expected from a careful, prudent man.

It is true that the motorman had a right to believe the automobile would move from the track, but this belief was based on a lack of knowledge of the conditions with which the plaintiff was dealing. The stationary object on the car track, when in full view of the motorman, gave effective notice of the danger, and it was his duty to approach it under proper speed, as he had at hand all the appliances to control the speed of the car. The question was purely one of fact, and was submitted in a clear and adequate charge. The opinion of this court was given a construction not intended, and we feel that it was not warranted, when the whole paragraph relating to the plaintiff's duty is considered.

The judgment is reversed and record remitted with the direction to enter judgment on the verdict in favor of the plaintiff.